1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NOEL HERNANDEZ GUILLEN,

                          Plaintiff,

          v.

ICE HEALTH SERVICE CORPS, *et al.*,

                          Defendants.

Case No. C22-5894-DGE-MLP

REPORT AND RECOMMENDATION

14          **I.          INTRODUCTION AND SUMMARY CONCLUSION**

15          This is a *pro se* civil rights action proceeding under *Bivens v. Six Unknown Federal*

16  *Narcotics Agents*, 403 U.S. 388 (1971). Plaintiff Noel Hernandez Guillen is in the custody of

17  Immigration and Customs Enforcement ("ICE") and is currently being detained at the Northwest

18  ICE Processing Center ("NWIPC") in Tacoma, Washington. The claims asserted in this action

19  relate to the adequacy of the medical care Plaintiff has received while confined at the NWIPC.

20  Plaintiff has been granted leave to proceed with this action *in forma pauperis*. This matter is now

21  before the Court for the purpose of screening Plaintiff's amended civil rights complaint.

22          The Court, having reviewed Plaintiff's amended complaint, and the balance of the record,

23  concludes that Plaintiff has not stated a viable claim for relief in this action. The Court therefore

recommends that Plaintiff's amended complaint and this action be dismissed, without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B).

## II.    BACKGROUND

Plaintiff's original complaint was received by this Court for filing on November 18, 2022.[1] Plaintiff alleged in his complaint that he was being denied necessary medical treatment by a nurse and a doctor employed by the ICE Health Service Corps ("IHSC") at the NWIPC. (*See* dkt. # 11 at 4-8.) At issue was the IHSC doctor's decision to terminate Plaintiff's Suboxone treatment. (*See id*. at 15-17.) Plaintiff alleged that his Suboxone treatment was terminated after the nurse incorrectly reported to the doctor that Plaintiff was "cheeking" his medication. (*Id*. at 4-8, 15-17.) Plaintiff further alleged that the denial of this treatment caused him to suffer physically, mentally, and emotionally. (*See id*.)

Plaintiff named as Defendants in his complaint the nurse who purportedly accused him of "cheeking" his medication, Sofya Gancharova, R.N., and the doctor who terminated his Suboxone treatment, Ashok Mallya, M.D. (Dkt. # 11 at 2-3.) Plaintiff also named IHSC as a Defendant in his complaint. (*Id*. at 2.) As relief, Plaintiff requested that the two medical providers be disciplined or fired, and that the Court order compensation in the amount of $80,000 for the physical, mental, and emotional damage he had suffered. (*Id*. at 5.)

After reviewing the complaint, this Court concluded that Plaintiff had not adequately stated a viable claim for relief in his pleading. Thus, on December 28, 2022, the Court issued an Order declining to serve the complaint and granting Plaintiff leave to file an amended complaint. (Dkt. # 12.) In that Order, the Court set forth the general pleading requirements for a civil action,

---

[1] Plaintiff originally filed this action in the United States District Court for the Eastern District of Washington. (*See* dkt. # 1.) After reviewing the complaint, a judge in the Eastern District of Washington determined that venue was proper in this District and ordered that the case be transferred. (*See* dkt. # 5.)

the standard applicable to claims asserted under *Bivens*, and the due process standard for claims of inadequate medical care asserted by a civil detainee. (*Id*. at 2-3.) The Court went on to explain that Plaintiff's complaint was deficient in various ways.

The Court first noted that Plaintiff made no reference to Dr. Mallya in the statement of his claim. (Dkt. # 12 at 3.) The Court advised Plaintiff that if he wished to pursue a claim against Dr. Mallya, he would have to specifically allege a claim against the doctor and set forth clear and specific facts demonstrating that the doctor violated his federal constitutional rights. (*Id*. at 4.)

The Court next noted that the facts alleged by Plaintiff in support of his claim against R.N. Gancharova were insufficient to demonstrate that the nurse was deliberately indifferent to a serious medical need. (Dkt. # 12 at 4.) Plaintiff alleged that after R.N. Gancharova provided him his medication, he showed her his mouth for her to check that it was clean. (*Id*. (citing dkt. # 11 at 4-5).) Plaintiff further alleged that when R.N. Gancharova saw a small piece of the medicine in his mouth, she said he was trying to "cheek" it, a conclusion which Plaintiff disputed. (*Id*.) The Court advised Plaintiff that if he wished to proceed against R.N. Gancharova, he would have to allege sufficient facts to satisfy the due process standard set forth in the Court's Order. (*Id*.)

The Court also noted that Plaintiff had identified IHSC as a Defendant in his complaint but had alleged no specific cause of action implicating IHSC in his pleading. (Dkt. # 12 at 4.) The Court explained as well that IHSC was not a proper Defendant in a *Bivens* action and that Plaintiff therefore could not proceed against this entity. (*Id*.) Finally, as to Plaintiff's request for relief, the Court explained that it had no authority to direct that disciplinary action be undertaken against the named Defendants or that their employment be terminated. (*Id*.)

The Court granted Plaintiff thirty days to file an amended complaint correcting the noted deficiencies, and on January 11, 2023, the Court received Plaintiff's amended complaint for

REPORT AND RECOMMENDATION
PAGE - 3

1  filing. (Dkt. # 13.) In the first count of his amended complaint, Plaintiff identifies the right at

2  issue as "Access to my medical treatment," and he indicates that both Dr. Mallya and R.N.

3  Gancharova are implicated in this claim. (*Id*. at 4.) However, the facts set forth in support of this

4  claim pertain only to R.N. Gancharova.

5         Specifically, Plaintiff asserts that R.N. Gancharova showed up at his cell on the morning

6  of August 25, 2022, with his "treatment," which he identifies as a 12ml dose of Buprenorphine.

7  (Dkt. # 13 at 4.) Plaintiff claims that his mouth was dry because he had been asleep when the

8  nurse arrived, and he placed the medication under his tongue as he was supposed to. (*Id*.)

9  Plaintiff asserts that because his mouth was dry, he was trying to make saliva so that the

10  medication would dissolve. (*Id*. at 5.) But in the process of doing so, a piece of the medication

11  got stuck on the top of Plaintiff's mouth where he has a "fake denture," and therefore, no feeling.

12  (*Id*.) According to Plaintiff, he advised the nurse that the medication was gone, and when she

13  asked him to open his mouth, she saw the piece of medication that had gotten stuck to the

14  denture. (*Id*.) Plaintiff claims that the nurse told him he was trying to "cheek" the medication,

15  which he disputes. (*Id*.)

16         Plaintiff goes on to assert that R.N. Gancharova came to his cell the following day to

17  provide him his treatment, and he noticed it was not the correct dose. (Dkt. # 13 at 5.) When

18  Plaintiff advised the nurse that he needed the correct dose, she left and returned with a "refusal

19  form" for him to sign, which he declined to do. (*Id*.) Plaintiff claims he never refused his

20  treatment, he was simply "demanding my right dose." (*Id*.) Plaintiff asserts that after this

21  incident, his treatment was stopped altogether, but he was never provided a reason. (*Id*.) Plaintiff

22  also asserts that his subsequent requests to get the medication back were ignored. (*Id*.) Plaintiff

23

REPORT AND RECOMMENDATION
PAGE - 4

claims that the loss of his medication caused him stress, sleeplessness, headaches, joint pain, anger, thoughts of self-harm, and loss of appetite. (*Id*.)

In the second count of his amended complaint, Plaintiff identifies the right at issue as "Medical negligence, treatment asitence (sic)," and he indicates that only Dr. Mallya is implicated in this claim. (Dkt. # 13 at 6.) Plaintiff alleges in support of this claim that on September 9, 2022, he submitted a grievance regarding his treatment because he was suffering without it, and on September 12, 2022, a mental health assistant called him to her office where he explained what he was going through. (*Id*.) According to Plaintiff, the assistant called Dr. Mallya to see if Plaintiff could get his treatment back, and when the doctor arrived, he told Plaintiff that was not going to happen because of the incident involving R.N. Gancharova. (*Id*.) The doctor explained, however, that he would treat Plaintiff with other medicine. (*Id*.)

Plaintiff asserts that when he subsequently went to sick call, the provider there told him that Dr. Mallya had prescribed him Tylenol and anti-nausea medication, which in Plaintiff's view, did not constitute a "treatment" and did not help alleviate his symptoms. (Dkt. # 13 at 6.) Plaintiff claims that he went back to his unit "without a treatment and still sufering [sic]." (*Id*. at 6-7.) He maintains that the absence of appropriate treatment caused him stress, anger, sleepless nights, headaches, joint pain, dizziness, nausea, and loss of appetite. (*Id*. at 7.)

Plaintiff identifies only R.N. Gancharova and Dr. Mallya as Defendants in his amended complaint. (Dkt. # 13 at 1, 3.) He requests damages in the amount of $80,000 to compensate him for the emotional, physical, and mental damage he has suffered. (*Id*. at 9.) He also requests that Defendants be suspended from their jobs "if [it] is possible." (*Id*.)

REPORT AND RECOMMENDATION
PAGE - 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

### III.    DISCUSSION

#### A.    Legal Standards

Rule 8(a) of the Federal Rules of Civil Procedure provides that in order for a pleading to state a claim for relief it must contain a short and plain statement of the grounds for the court's jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought. The statement of the claim must be sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The factual allegations of a complaint must be "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In addition, a complaint must allege facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In order to sustain a cause of action under *Bivens*, a plaintiff must allege facts showing that: (1) a right secured by the Constitution or laws of the United States was violated; and (2) the alleged deprivation was committed by a federal actor. *See Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

Though Plaintiff does not specifically identify the constitutional right at issue in his amended pleading, his claim of inadequate medical care arguably implicates due process concerns.[2] A civil detainee's claim of inadequate medical care may state a plausible civil rights

---

[2] As the Court explained in its Order declining to serve Plaintiff's original complaint, "[w]hen the Government takes a person into custody and detains him against his will, the Constitution imposes upon the Government a duty to assume responsibility for that detainee's safety and general well-being." (Dkt.

REPORT AND RECOMMENDATION
PAGE - 6

1  claim if the alleged mistreatment rises to the level of "deliberate indifference to serious medical

2  needs." *See Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018). To state a

3  plausible claim for inadequate medical care, a detainee must allege four elements: (1) the

4  defendant made an intentional decision with respect to conditions under which the plaintiff was

5  confined; (2) the conditions put plaintiff at substantial risk of suffering serious harm; (3) the

6  defendant did not take reasonable measures to abate the risk, "even though a reasonable official

7  in the circumstances would have appreciated the high degree of risk involved – making the

8  consequences of the defendant's conduct obvious;" and (4) by not taking such measures, the

9  defendant caused plaintiff injury. *Id*. at 1125 (citing *Castro v. County of Los Angeles*, 833 F.3d

10  1060, 1071 (9th Cir. 2016)).

11        "With respect to the third element, the defendant's conduct must be objectively

12  unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular

13  case.'" *Gordon*, 888 F.3d at 1125 (quoting *Castro*, 833 F.3d at 1071 (quoted sources omitted)).

14  A defendant's "mere lack of due care" is insufficient to establish a constitutional violation. (*Id*.)

15  Neither negligence, nor a difference of opinion with medical authorities supports a claim of

16  deliberate indifference. *Toguchi v. Chung*, 391 F.3d 1051, 1057-58 (9th Cir. 2004)*.* An inmate

17  must show the course of treatment chosen "'was medically unacceptable'" and chosen "'in

18  conscious disregard of an excessive risk to plaintiff's health.'" *Id.* at 1058 (quoting *Jackson v.*

19  *McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)).

20  //

21  //

22

23  # 12 at 3 (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs*., 489 U.S. 189, 199-200 (1989)).)
Thus, the Government violates the Due Process Clause if it fails to provide civil detainees with "food,
clothing, shelter, medical care, and reasonable safety." (*Id.* (quoting *DeShaney*, 489 U.S. at 200).)

REPORT AND RECOMMENDATION
PAGE - 7

**B.     Analysis**

Plaintiff fails to state a plausible due process claim against either of the Defendants named in his amended complaint. Plaintiff complains that he was denied access to necessary medical care at NWIPC when his Suboxone treatment was abruptly terminated, and he appears to attribute the cessation of his treatment to what he believes was an erroneous conclusion by R.N. Gancharova that he was attempting to "cheek" his medication. (*See* dkt. # 13 at 4-5.) However, according to the allegations in Plaintiff's amended complaint, his treatment was not terminated after the incident involving R.N. Gancharova on August 25, 2022. (*See id*. at 5.) Plaintiff makes clear that he was offered his medication again the following day, August 26, 2022, but he refused to take it because he believed that R.N. Gancharova had brought him the incorrect dosage of the medication. (*Id*.) It was after this incident that Plaintiff's Suboxone treatment was apparently terminated. (*See id*.)

Nothing in Plaintiff's amended complaint or in his attached exhibits suggests that R.N. Gancharova made any of the treatment decisions Plaintiff complains of here. Plaintiff acknowledges that, on August 25, 2022, a piece of material from the medication got stuck on the top of his mouth. (*See* dkt. # 13 at 4-5.) The fact that the nurse reported her observation of this to Dr. Mallya does not render her responsible for the doctor's subsequent treatment decisions, which included offering Plaintiff a reduced dosage of the medication the following day and ultimately terminating the treatment altogether. (*See id*. at 5-6; *see also* dkt. # 13-1 at 3, 5.) Plaintiff's allegations against R.N. Gancharova are insufficient to establish any deliberate indifference on her part.

Plaintiff's allegations against Dr. Mallya likewise are insufficient to establish deliberate indifference. Exhibits attached to Plaintiff's amended complaint reveal that at the time he arrived

REPORT AND RECOMMENDATION
PAGE - 8

at NWIPC, a plan was established to taper his Suboxone treatment down over the course of six-weeks, a plan Plaintiff agreed to. (Dkt. # 13-1 at 3.) After receiving the nurse's report that Plaintiff had been observed pushing the medication film to the roof of his mouth instead of allowing it to dissolve on his tongue, Dr. Mallya decided to accelerate the taper. (*See id*.) Plaintiff apparently objected to this accelerated taper and refused to take the offered medication. (Dkt. # 13 at 5.) Dr. Mallya thereafter stopped the treatment and refused Plaintiff's request to restart it, concluding that the symptoms Plaintiff was experiencing from having the medication stopped could be treated with other medications. (*See* dkt. # 13-1 at 3, 5.) Though Plaintiff clearly disagreed with Dr. Mallya's treatment decisions, his disagreement does not render the decisions unreasonable and does not suffice to establish deliberate indifference. *See Toguchi*, 391 F.3d at 1058.

## IV.    CONCLUSION

Based on the foregoing, this Court recommends that Plaintiff's amended complaint and this action be dismissed, without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B), for failure to state a cognizable claim for relief under *Bivens*. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **February 24, 2023**.

REPORT AND RECOMMENDATION
PAGE - 9

DATED this 1st day of February, 2023.


MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 10